## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | |
|---|---|
| MITCHELL EPHRAIN,           )<br>                             )<br>   Plaintiff,                )<br>                             )<br>   v.                        )<br>                             )<br>GREG GOSSETT, ZACH ROECKEMAN, )<br>RICK ORR, JEFFREY CORTE, KIM )<br>BUTLER, JOSEPH YURKOVICH,    )<br>DONALD STOLWORTHY, MARK      )<br>ERSONNE, CHAD BAKER, SARAH   )<br>SCOGGAN, TIMOTHY CARSON,     )<br>JAMES BLAESING, STEVEN ALBERT, )<br>ALLAN CARLTON, DEBRA CARLOCK, )<br>RICHARD RUBLE, JEFFREY CHUTE, )<br>MICHAEL COSGROVE, DIANA      )<br>COLLISON, JAMES GARNER,      )<br>JEFFREY SHELTS, PORTIA RENCH, )<br>JEREMY INK, BRIAN SHAW, DAVID )<br>RANK, JOHN GRAHAM, RONNIE HAM,)<br>ROBERT SNOW, BRYAN VANS, LLOYD)<br>JAYNES, MICHAEL LAWSON, STEVEN)<br>SMITH, TIMOTHY REDMORE,      )<br>ROBERT OWERS, DANIEL         )<br>REFOUNTAIN, DAVID ANGLE,     )<br>STEVEN SNYDER, JASON SORRELLS, )<br>WHITNEY BECKMAN, MATTHEW     )<br>SMITH, JAMMIE WATSON, BARRY  )<br>WEAR, BRIAN WADE, SCOTT      )<br>ZIMMERMAN, CHRISTOPHER       )<br>WYDELL, KOREY WONDLES, BART  )<br>WHITNEY, MURRAY WORTMAN,     )<br>EDWARD HOOPMAN, KULE         )<br>MOUNTAIN, DERRICK NASH,      )<br>MICHAEL NISLEY, MICHAEL      )<br>MONTGOMERY, STIRLING HOWARDS,)<br>BRIAN VANS, DAVID GASKO, LANCE )<br>GREGERSON, MICHAEL GARRETT,  )<br>and Other Unknown Agents of the )<br>Tactical Team Known as "Orange )<br>Crush,"                      ) | Case No.   15-cv-3359 |

)
Defendants.                              )

# MERIT REVIEW AND CASE MANAGEMENT ORDER

Plaintiff Mitchell Ephrain, proceeding *pro se*, is currently incarcerated in the Lawrence Correctional Center ("Lawrence"), but has filed a civil rights complaint based upon events that happened when he was incarcerated at the Western Illinois Correctional Center ("Western").[1] He was granted leave to proceed *in forma pauperis*, and the case is now before the Court for a merit review of Plaintiff's claims. The Court must "screen" Plaintiff's Complaint to "identify cognizable claims" or dismiss it or any portion of it that is "frivolous, malicious, [ ] fails to state a claim upon which relief may be granted," or "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).

In reviewing the Complaint, the Court accepts the factual allegations as true, and liberally construes them in Plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). However, conclusory statements and labels are insufficient. Plaintiffs must provide enough facts to "state a claim for relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) (internal citations and quotations omitted).

### FACTUAL BACKGROUND

Plaintiff alleges that in April of 2014, correctional officers employed by the Illinois Department of Corrections ("IDOC") conducted a tactical shakedown of each

---

[1] Plaintiff refers to Western as "Mount Sterling" throughout his Complaint. (*See, e.g.,* Doc. 1 at 3). Western is located in Mount Sterling, Illinois.

house at Western, during which they used excessive force against him and other inmates, and required him and other inmates to humiliate themselves.

These officers, who are part of the IDOC's Special Operations Response Team (known colloquially as "Orange Crush"), entered Plaintiff's housing unit wing yelling loudly, making loud "whooping" noises, and hitting their batons against cell doors and railings. (Doc. 1 at 8). Orange Crush team members – some of whom were female – lined up outside of inmates' cells, including Plaintiff's, and demanded that the inmates "get asshole naked!" (*Id.* at 8-9). Orange Crush members then demanded that the inmates, including Plaintiff, leave their cells one at a time to be searched. (*Id.* at 8). Plaintiff, like other inmates, left his cell. He was ordered to bend over (with his backside facing the officers) spread his buttocks, and lift each foot off of the ground. (*Id.*). Orange Crush Officers then ordered him to face the officers, lift his genitals, and then (without first washing his hands after having spread his buttocks and lifting his genitals) use his hands to open his mouth. (*Id.*). When inmates objected to the search, Orange Crush officers shouted them down by yelling, "Shut the fuck up!" Orange Crush officers also threatened them with segregation if they refused to open their mouths with their unwashed hands. (*Id.* at 8-9).

Following the strip search, members of the Orange Crush team ordered Plaintiff and the other inmates to return to their cells and dress themselves. (*Id.* at 9). They then forced Plaintiff and other inmates to face the wall and ordered them to keep their heads down. The Orange Crush team handcuffed the inmates, including Plaintiff, "in a particularly painful way." (*Id.*). Plaintiff complained about

the painful handcuffs, and asked to see a nurse to no avail. (*Id.*). The Orange Crush team, using coarse language, told Plaintiff and the other inmates to stay silent and keep their heads down, or risk being sent to segregation. (*Id.*).

After the Orange Crush team cuffed Plaintiff and the other inmates in his housing unit, they lined them up and hit their hands with batons for several minutes while chanting "punish the inmates." (*Id.*). The Orange Crush team then escorted Plaintiff and the other inmates from the cell house to the gym. (*Id.* at 9-10). It forced the inmates to walk in a manner described as "nuts to butts": the officers put the inmates in position by slamming each inmate's head into the back of the inmate standing in front of him and forcing the inmates to stand so closely that their genitals were in contact with the buttocks of the men standing in front of them. (*Id.* at 10). Plaintiff alleges that this was extremely painful. He became dizzy and lightheaded standing in this bent-over position and fell twice. (*Id.*). Whenever Plaintiff broke physical contact with the prisoner in front of him, Orange Crush officers responded with violence.

Once Plaintiff and the other inmates made it to the gym, the Orange Crush officers ordered Plaintiff and other prisoners to face the wall with their heads down, where they had to stand few hours. The Orange Crush officers who remained in the gym instructed Plaintiff to not seek medical attention, not ask for water, and not request to use the bathroom. Plaintiff's hands remained tightly handcuffed throughout this period of time. (*Id.* at 11).

After a few hours in the gym, the Orange Crush team marched the inmates back to their cell house. Officers forced Plaintiff and the other inmates into the

same nuts-to-butts formation, taunted Plaintiff and the other inmates, and used force against Plaintiff and the other inmates if they broke formation. (*Id.*). When Plaintiff returned to his cell, he found that it had been tossed and that non-contraband items had been taken. (*Id.* at 12). Plaintiff asked the officers to get Western's warden, but they declined and informed him that the warden already knew about what was happening. (*Id.*).

## DISCUSSION

Plaintiff has filed his Complaint pursuant to 42 U.S.C. § 1983 against fifty-eight named Defendants and other unknown agents of the Orange Crush team, and alleges that they have violated his Eighth Amendment rights and committed various state law torts. He has attempted to bring the case as a class action on behalf of all inmates housed at Western and three other prisons in Illinois. (Doc. 1 at 13). Before addressing the merits of Plaintiff's particular claims, the Court must consider whether Plaintiff can bring these claims on behalf of a class.

### I. Plaintiff's Class Allegations

Plaintiff seeks to represent a class consisting of all individuals housed at Western, Illinois River Correctional Center, Big Muddy River Correctional Center, and Menard Correctional Center who were subject to shakedowns in 2014. (*Id.*). He alleges that the shakedowns at each of these prisons were implemented "pursuant to a policy or practice . . . overseen by" Defendant Joseph Yurkovich, who was "responsible for supervision and oversight of the Orange Crush team." (*Id.* at 15.). Yurkovich, together with Defendants "Gossett, Cordy, Roeckeman, [and] Butler"

5

"did nothing to ensure that . . . prisoners at their facilities were treated humanely" by the Orange Crush team. (*Id.* at 15-16).

Plaintiff may not represent a class of inmates. "Although individuals may represent themselves in federal court, *pro se* litigants and non-lawyers cannot represent other individuals." *Bentz v. Butler*, No. 14-CV-00996-NJR, 2015 WL 1361013, at *1 (S.D. Ill. Mar. 23, 2015) (citing *Nocula v. Tooling Sys. Int'l Corp.*, 520 F.3d 719, 725 (7th Cir. 2008)). Plaintiff has not filed a motion for class certification, but if he had it would be denied, as *pro se* inmates cannot adequately represent the interests of other inmates in a class action. *Id.* In light of this, Plaintiffs' claims must be limited to injuries that he suffered while he was an inmate at Western.

As Plaintiff cannot bring a class action, supervisory defendants who implemented Orange Crush shakedowns at Illinois River, Big Muddy River, and Menard, but did not implement the shakedown at Western must be dismissed. In a lawsuit brought pursuant to 42 U.S.C. § 1983, government officials are only liable for conduct in which they are personally involved. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Plaintiff alleges that Defendant Yurkovich "was responsible for supervision and oversight of the Orange Crush team," and worked with "I.D.O.C. supervisors" to implement certain policies and practices with respect to shakedowns at various "I.D.O.C. facilities." (Doc. 1 at 15). The relevant supervisors at Western, Illinois River, Big Muddy River, and Menard are Defendants Corte, Greg Gossett, Zach Roeckeman, and Kim Butler. (*Id.* at 15-16). As Plaintiff alleges that Defendant Corte (sometimes referred to as "Cordy" in the Complaint) was the Warden at

6

Western during the shakedown (*see id.* at 12),[2] the remaining wardens (Defendants Gossett, Roeckeman, and Butler) must be dismissed.[3] Defendant Rick Orr must also be dismissed, as Plaintiff has not alleged that he was involved in the shakedown at Western in any way.

## II. Plaintiff's Claims

### A. Eighth Amendment

Plaintiff first claims that during the shakedown, Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment.

Prison officers violate the Eighth Amendment when they use force "maliciously and sadistically to cause harm," rather than as part of a "good-faith effort to maintain or restore discipline." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). In the context of strip searches, prison officials violate the Eighth Amendment when their actions are either "motivated by a desire to harass or humiliate rather than by a legitimate justification, such as the need for order and security in prisons," or otherwise justified but "conducted in a harassing manner intended to humiliate and cause psychological pain." *E.g., King v. McCarty*, 781 F.3d 889, 897 (7th Cir. 2015). The

---

[2] Plaintiff also identified Defendant Rock Orr as "the [w]arden of [o]peration [p]rogram for Western Illinois Department of Correction." (Doc. 1 at 6). However, he has not included alleged that Orr was involved in any way in the deprivation of his constitutional rights.

[3] Plaintiff also alleges that Yurkovich, Corte, Gossett, Roeckeman, and Butler are members of the Orange Crush team assigned to Western. (Doc. 1 at 6-7). Ordinarily, courts must accept factual allegations in a complaint as true. However, Plaintiff's joint allegations – that Gossett, Roeckeman, and Butler supervise IDOC facilities (and correctional officers working at those institutions) and also were members of the Orange Crush team at Western (made up of officers that would be under their supervision at their respective institutions) is implausible.

Seventh Circuit has further held that prison officials violate the Eighth Amendment when they transport inmates in a way that appears to be "calculated harassment unrelated to prison needs" or "intended to humiliate and cause psychological pain." *See King*, 781 F.3d at 897 (internal quotations marks omitted); *see also Washington v. Hively*, 695 F.3d 641, 643 (7th Cir. 2012) (explaining that "[a]n unwanted touching of a person's private parts, intended to humiliate the victim or gratify the assailant's sexual desires, can violate a prisoner's constitutional rights," and further noting that "sexual offenses need not involve *any* touching.").

Plaintiff's allegations are sufficient to state a claim that the members of the Orange Crush team beat him "maliciously and sadistically to cause harm." *See Wilkins*, 559 U.S. at 37; *see also Ellis v. Myers*, No. 3:14-CV-1575 JD, 2014 WL 3818266, at *1 (N.D. Ind. Aug. 1, 2014) (holding that inmate's allegations that he was repeatedly struck with elbows and knees, overly-restrictively restrained in handcuffs and leg irons, and kicked sufficiently state Eighth Amendment claim even when it is unclear whether inmate was acting disruptively). His allegations that the Orange Crush team forced him to come into close contact with another inmate's genitals and put his own genitals in close contact with another inmate while moving from the housing unit to the gym and also while waiting in the gym over an extended period of time are sufficient to state a claim that the members of the Orange Crush team behaved in a way that was either calculated to harass him or intended to humiliate him and cause him psychological pain. *See King*, 781 F.3d at 897.

The fact that Plaintiff has identified a large group of Defendants who were members of the Orange Crush team and failed to attribute specific acts to specific individuals is not fatal to his claims at this stage. Here, Plaintiff has identified members of the Orange Crush team as a group, and has alleged that the group violated his constitutional rights. Group pleading in a situation like this is permissible. *See Koh v. Graf*, No. 11-cv-2605, 2013 WL 5348326, at *4 (N.D. Ill. Sept. 24, 2013). Not permitting group pleading "would effectively allow" the Orange Crush team "to violate constitutional rights with abandon as long as they ensured they could not be individually identified . . . ." *Id.* "Correctional officers may not benefit from a plaintiff's inability to identify particular officers who were involved in an alleged violation of inmate rights." *Ross v. Gossett*, No. 15-cv-309, 2016 WL 335991, at *3 (S.D. Ill. Jan. 28, 2016). The Court notes, however, that in order to survive a motion for summary judgment, Plaintiff will need to identify all John Doe Defendants through discovery and also tie each individual Defendant (Doe and named) to actions arising out of the shakedown and related events that violated his constitutional rights.

Plaintiff's allegations against Defendants Yurkovich and Corte are sufficient to establish that they violated his Eighth Amendment rights. *See Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001) (explaining that supervisors can be held liable for conduct that violates the constitution if they "know about [it] and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see.").

## B. Conspiracy

Plaintiff also includes a broad conspiracy claim, which he alleges in a conclusory manner: "Defendants reached an agreement among themselves to deprive the prisoners housed at Illinois River, Big Muddy River, Menard and Mt. Sterling (including Mr. Mitchell) of their constitutional rights and to protect one another from liability for depriving the prisoners of their rights . . . ." (Doc. 1 at 17). Plaintiff's complaint, taken as a whole, properly alleges a conspiracy. But, the conspiracy is narrower than the conclusory, broad conspiracy that he has alleged.

"[C]onspiracy is not an independent basis of liability in § 1983 actions." *Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008). Instead, "the function of conspiracy doctrine is merely to yoke particular individuals to the specific torts charged in the complaint." *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988). "To state a claim for § 1983 conspiracy, a plaintiff must allege: '(1) an express or implied agreement among defendants to deprive plaintiff of his or [his] constitutional rights and (2) actual deprivation of those rights in the form of overt acts in furtherance of the agreement.'" *Harshaw v. Sarabia*, No. 09 CV 6723, 2011 WL 196832, at *3 (N.D. Ill. Jan. 19, 2011) (quoting *Scherer v. Balkema*, 840 F.2d 437, 442 (7th Cir. 1988)). A plaintiff cannot satisfy his pleading burden with a bare allegation of conspiracy. *Conney v. Rossiter*, 583 F.3d 967, 970 (7th Cir. 2009). At a minimum, he must plead allegations regarding the parties, general purpose, and approximate date of the conspiracy. *Loubser v. Thacker*, 440 F.3d 439, 443 (7th Cir. 2006). A plaintiff can survive a motion to dismiss by pleading – throughout the

10

complaint as a whole – circumstantial allegations that allow for a plausible inference of such an agreement. *See Geinosky v. City of Chicago*, 675 F3d 743, 749 (7th Cir. 2012).

Plaintiff's conclusory, direct allegation that all Defendants entered into an agreement to violate the rights of prisoners held at Western, Menard, Illinois River, and Big Muddy River, standing alone, cannot support a conspiracy claim. *See Conney*, 583 F.3d at 970. However, Plaintiff's circumstantial allegations allow for the reasonable inference that Defendants Yurkovich, Corte, and members of the Orange Crush team operating at Western entered into a conspiracy to violate Plaintiff's constitutional rights. Specifically, Plaintiff has alleged that members of the Orange Crush team engaged in coordinated activity during the shakedown of Western, and that Defendants Corte and Yurkovich helped implement and coordinate that behavior. Taken together, these allegations are sufficient to allow an inference that an agreement was reached between members of the Orange Crush team, Corte, and Yurkovich as to how the Orange Crush team was going to conduct the shakedown at Western in April of 2014. *See Geinosky*, 675 F.3d at 749 (holding that an alleged pattern of harassment allowed for an inference of a conspiratorial agreement); *Petrovic v. City of Chicago*, 06 C 6111, 2008 WL 4286954, at *8 (N.D. Ill. Sept. 16, 2008) (concluding, at summary judgment, that a reasonable jury could find an implied conspiracy based on officers "act[ing] in concert" to violate a plaintiff's constitutional rights); *Williams v. Brown*, 269 F. Supp. 2d 987, 994-95 (N.D. Ill. 2003) (concluding that evidence of coordinated action allows for the inference of a conspiracy); *Ross v. Gossett*, 15-cv-309, 2016 WL 335995, at *3 (S.D.

11

Ill. Jan. 28, 2016) (allowing a conspiracy claim to proceed under nearly identical facts).

However, Plaintiff's allegations cannot plausibly support a broader agreement encompassing alleged shakedowns at Illinois River, Big Muddy River, and Menard. First, there is no indication of when the shakedowns at those three institutions occurred in relation to the shakedown of Western. Plaintiff simply alleges that other prisoners housed in those institutions "were subjected to the 2014 shakedowns." (Doc. 1 at 13). Second, there are only conclusory allegations regarding the shakedowns of the other institutions, as Plaintiff alleges that "[h]is treatment during the shakedown in late April 2014 is typical of other prisoners throughout Western Illinois, and at the other facilities where the Orange Crush team conducted these abusive shakedowns." (*Id.* at 14). Third, and most importantly, the allegations relating to the wardens at the other facilities suggest that they did not agree to the shakedown at Western that injured Plaintiff. *See Jones*, 856 F.2d at 992 (explaining that to prove a conspiracy a plaintiff must establish that all members understood "the general objectives of the scheme, accept[ed] them, and agree[d] either explicitly or implicitly, to do [their] part to further them."). Plaintiff's allegations regarding Gossett, Roeckeman, and Butler suggest that they were knowledgable about the manner in which the Orange Crush teams operated, but they do not suggest that the wardens ever reached an agreement that the Orange Crush team would operate in any particular way other than the way in which it operated within their respective institutions. (*See* Doc. 1 at 16 (alleging that Gossett, Rocekeman, and Butler "had notice [of] widespread policies and practices" of the Orange Crush team,

12

and despite that knowledge, "did nothing to ensure that . . . prisoners at their facilities were treated humanely . . . ."). As such, Plaintiff's allegations do not establish that Gossett, Roeckeman, and Butler agreed to deprive him of his rights.

### C. Failure to Intervene

Plaintiff has also alleged that all Defendants violated his constitutional rights by failing to intervene and stop the Orange Crush team. An officer who is present and fails to intervene and prevent other officers from violating the constitutional rights of individuals is liable under § 1983 if that officer "had reason to know: (1) that excessive force was being used, (2) that a citizen has been unjustifiably arrested, or (3) that any constitutional violation has been committed by a law enforcement official; *and the* officer had a realistic opportunity to intervene to prevent the harm from occurring." *Abdullahi v. City of Madison*, 423 F.3d 763, 774 (7th Cir. 2005) (quoting *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994)). Officers have a realistic opportunity to intervene if they could have cautioned those committing the constitutional violation to have stopped. *Id*. Plaintiff has not alleged that Defendants Corte or Yurkovich were present during the shakedown, so his failure to intervene claim cannot proceed against them. *See Powell v. City of Berwyn*, 68 F. Supp. 3d 929, 942 (N.D. Ill. 2014) (holding that officers who are not present during a constitutional violation cannot be held liable for a failure to intervene). He has, however, stated a failure to intervene claim against each of the members of the Orange Crush team who were involved in the shakedown at Western and in his presence.

13

### D. Prison Rape Elimination Act

Petitioner also alleges that the Orange Crush team violated the Federal Prison Rape Elimination Act. (Doc. 1 at 19-20). There is no private right of action available under the Prison Rape Elimination Act, so this claim must be dismissed. *See Ross*, 2016 WL 335991, at *4 (surveying cases and holding that the Prison Rape Elimination Act does not include an private right of action).

### E. Intentional Withholding and then Delaying Medical Treatment

Plaintiff has also included a claim for a state tort that he identifies as: "intentional withholding and then delaying medical treatment." (Doc. 1 at 21-22). Under Illinois law, the state has a duty to provide inmates with reasonable medical care. *See Robinson v. State*, 47 Ill. Ct. Cl. 364, 369 (1994). However, the Illinois Local Governmental and Governmental Employees Tort Immunity Act provides state employees with immunity "for injury proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in his custody" unless an employee "knows from his observation of conditions that the prisoner is in need of immediate medical care and, through willful and wanton conduct, fails to take reasonable action to summon medical care." 745 Ill. Comp. Stat. § 10/4-105; *see also Johnson v. Myers*, 109 F. App'x 792, 795 (7th Cir. 2004).

Perhaps Plaintiff has alleged that members of the Orange Crush team willfully declined to provide him with medical treatment in order to overcome this statutory immunity bar. Even so, Plaintiff's allegations that he was in pain because his handcuffs were too tight and because he fell on his knees are devoid of details and insufficient to establish that he was in need of "immediate medical care." *See*

14

745 Ill. Comp. Stat. § 10/4-105; *Williams v. Rodriguez*, 509 F.3d 392, 405 (7th Cir. 2007) (equating the need for "immediate medical care" with whether a medical condition is "objectively serious"); *Gayton v. McCoy*, 59 F.3d 610, 620 (7th Cir. 2010) (a medical condition is "objectively serious" if it "has been diagnosed by a physician as mandating treatment" or if "even a lay person would perceive the need for a doctor's attention."). Therefore, this claim must be dismissed.

### F. Intentional Infliction of Emotional Distress

Finally, Plaintiff includes a state law claim that Defendants intentionally inflicted emotional distress upon him. To prove this claim in Illinois, Plaintiff must show: (1) that Defendants' conduct was "extreme and outrageous"; (2) that Defendants intended their conduct to inflict severe emotional distress (or at least knew that there was a high probability that their conduct would do so); and (3) that Plaintiff did in fact suffer severe emotional distress as a result of that conduct. *Lopez v. City of Chicago*, 464 F.3d 711, 720 (7th Cir. 2006) (citing *McGrath v. Fahey*, 126 Ill.2d 78 (1988)). The Court has reviewed the complaint and concludes that Plaintiff's allegations are sufficient to state a claim for intentional infliction of emotional distress.

IT IS THEREFORE ORDERED THAT:

1) Defendants Gossett, Roeckeman, Butler, and Orr are DISMISSED. Plaintiff's claims are limited to those Defendants who conspired to or personally participated in the events that injured him (i.e., the shakedown of his cell and injuries inflicted during the events prior to and following the shakedown). Plaintiff may not bring any claims on behalf of other inmates, or against Defendants who may have harmed or conspired to harm other inmates but did not harm or conspire to harm him.

2) Pursuant to its merit review of the complaint under 28 U.S.C. § 1915A, the Court finds that Plaintiff alleges that all remaining Defendants

conspired to and did violate his rights under the Eighth Amendment by using excessive force when removing him from his cell, by moving him from his cell to the gym at Western in a way that was sexually humiliating, and by forcing him to stand in the gym for an extended period of time in a way that was sexually humiliating. Plaintiff also alleges that all remaining Defendants other than Corte and Yurkovich violated his rights under the Eighth Amendment by failing to intervene and stop the members of the Orange Crush team from violating his rights under the Eighth Amendment. Finally, Plaintiff alleges a pendant state law claim that all remaining Defendants intentionally inflicted emotional distress upon him. These claims are stated against Defendants in both their individual and official capacities. Any additional claims shall not be included in the case, except at the Court's discretion on motion by a party for good cause shown or pursuant to Federal Rule of Civil Procedure 15.

3) Ordinarily, this case would now be in the process of service. However, the Court's order has considerably narrowed the scope of Plaintiff's claims, and Plaintiff's use of group pleading does not allow the Court or Defendants to easily determine against whom of the myriad named Defendants Plaintiff may have claims. Rather than serving all of the currently named Defendants, the Court will require Plaintiff to submit a list of those Defendants whom Plaintiff knows were involved in his claims, including any Doe Defendants whose identities may later be learned through discovery. The Court will direct service on those Defendants. Plaintiff must file this list within 30 days of service of this Order.

Entered this 17th day of June, 2016.

                                                s/Joe B. McDade
                                                JOE BILLY McDADE
                                    United States Senior District Judge